171 Wis.2d 499 (1992)
Dolly LISNEY, Plaintiff-Appellant-Petitioner,
v.
LABOR & INDUSTRY REVIEW COMMISSION, Vernon County and U.S. Fidelity & Guaranty Co., Defendants-Respondents.[]
No. 91-0976.
Supreme Court of Wisconsin.
Oral argument October 6, 1992.
Decided December 1, 1992.
*502 For the plaintiff-appellant-petitioner there were briefs by Kent I. Carnell, Laurie J. Woog and Lawton & Cates, S.C., Madison and oral argument by Mr. Carnell.
For the defendant-respondent, Labor and Industry Review Commission, the cause was argued by Stephen M. Sobata, assistant attorney general, with whom on the brief was James E. Doyle, attorney general.
For the defendant-respondent, Vernon County & U.S. Fidelity & Guaranty, there was a brief by John H. Schmid, Jr., Griffin G. Dorschel and Axley Brynelson, Madison.
SHIRLEY S. ABRAHAMSON, J.
This is a review of a published decision of the court of appeals, Lisney v. LIRC, 165 Wis. 2d 628, 478 N.W.2d 55 (Ct. App. 1991). The court of appeals affirmed an order of the Labor and Industrial Review Commission (LIRC), which the Vernon County Circuit Court, Michael J. Rosborough, Circuit Judge, had affirmed. LIRC had dismissed with prejudice Dolly Lisney's claim dated June 27, 1988, for the payment of medical expenses incurred as a result of a work-related injury. LIRC concluded that it had no jurisdiction to consider the claim because the Worker's Compensation Division had decided Dolly Lisney's claim for the same work-related injury in a final order of November 9, 1984. The Worker's Compensation Division order was not an interlocutory order, nor did it *503 reserve jurisdiction on any issues (including liability for future medical expenses).
The issue of law presented to this court is whether LIRC's order of dismissal violates sec. 102.42(1), Stats. 1989-90, of the Worker's Compensation Act. Section 102.42(1), provides in relevant part that "[t]he employer shall supply such medical, surgical, chiropractic, psychological, podiatric, dental and hospital treatment ... as may be reasonably required to cure and relieve from the effects of the injury ... The obligation to furnish such treatment and appliances shall continue as required to prevent further deterioration in the condition of the employe or to maintain the existing status of such condition whether or not healing is completed."[1]
The court of appeals concluded that although sec. 102.42(1) "extends an employer's obligation to pay medical benefits to maintain an existing condition or avoid deterioration of an employee's condition, it does not authorize the commission, once the proceedings have been finally closed, to issue additional orders requiring payment by the employer." Lisney, 165 Wis. 2d at 637.
We reverse the decision of the court of appeals. We conclude that sec. 102.42(1), Stats. 1989-90, requires an employer to pay medical expenses even after a final order has been issued. Accordingly we conclude that LIRC had jurisdiction to hear and determine Lisney's application, filed after a final order, for payment of the medical expenses she incurred after the hearing determining her worker's compensation benefits. We remand the cause to the circuit court to remand the cause to LIRC for further proceedings consistent with this opinion.

*504 I.
The material facts are undisputed for purposes of this review. Dolly Lisney, a nurse's aide at the Vernon County Nursing Home, sustained a back injury on September 24, 1978, while assisting a patient. After a hearing on her case in 1982, the Worker's Compensation Division issued an order (affirmed by LIRC) awarding Lisney temporary total disability, permanent partial disability of 8 percent of her body and compensation for medical expenses incurred prior to the hearing.
Lisney sought judicial review of this order in the circuit court. On remand from the Vernon County Circuit Court in the spring of 1984, the Worker's Compensation Division gave Lisney a hearing and entered a final order with no reservation of agency jurisdiction. Conflicting evidence had been presented to the examiner about whether Ms. Lisney would need continuing medical treatment. LIRC affirmed the order in 1985; the order was also affirmed by the circuit court and the court of appeals. Lisney did not, however, object to the 1985 order being final rather than interlocutory and did not raise, during either the administrative agency proceedings or court proceedings, the issue of payment for medical expenses she had continued to incur.
In July 1988, after the decision of the court of appeals on the 1985 order, Lisney filed an application with the Worker's Compensation Division seeking payment of medical expenses incurred since the 1982 hearing. LIRC dismissed the application with prejudice, concluding that it lacked jurisdiction to act on her application in light of the final order in her case.
Lisney's challenge to LIRC's dismissal is the focus of this proceeding. The circuit court and the court of appeals upheld the dismissal order. The court of appeals *505 concluded that while sec. 102.42(1) provides for payment of continuing medical expenses, it does not authorize LIRC to issue additional orders regarding medical expenses after a final order has been issued. Lisney, 165 Wis. 2d at 637.

II.
The final sentence of sec. 102.42(1) states that an employer's "obligation to furnish such treatment and appliances shall continue as required to prevent further deterioration in the condition of the employe or to maintain the existing status of such condition whether or not healing is completed." The issue before the court is whether this final sentence of sec. 102.42(1), Stats. 1989-90, overcomes the general rule that an injury creates a single cause of action and a final order determines all known and unknown aspects of a claim.
[1, 2]
The interpretation of a statute presents a question of law, and the "blackletter" rule is that a court is not bound by an agency's interpretation. Courts, however, frequently refrain from substituting their interpretation of a statute for that of the agency charged with the administration of a law. Courts will give varying degrees of deference to an agency's interpretation of a statute when they have concluded that the legislature charged the agency with the duty of administering the statute; that the agency's interpretation is of long standing; that the agency's interpretation entails its expertise, technical competence and specialized knowledge; and that through interpretation and application of the statute, the agency can provide uniformity and consistency in the field of its specialized knowledge. West Bend Educ. Ass'n v. WERC, 121 Wis. 2d 1, 11-12, 357 N.W.2d 534 *506 (1984). See also Jicha v. DILHR, 169 Wis. 2d 284, 290-91, 485 N.W.2d 256 (1992); Sauk County v. WERC, 165 Wis. 2d 406, 413, 477 N.W.2d 267 (1991); DILHR v. LIRC, 161 Wis. 2d 231, 243, 467 N.W.2d 545 (1991); Pigeon v. ILHR Dep't, 109 Wis. 2d 519, 524-25, 326 N.W.2d 752 (1982).[2]
[3]
A court does not, however, give deference to an agency's interpretation of a statute when the court concludes that the agency's interpretation directly contravenes the words of the statute, is clearly contrary to legislative intent, or is otherwise unreasonable or without rational basis. Beloit Educ. Ass'n v. WERC, 73 Wis. 2d 43, 67, 242 N.W.2d 231 (1976); Sauk County v. WERC, 165 Wis. 2d 406, 413, 467 N.W.2d 277 (1991). This standard of review is set forth in our cases[3] and in sec. 102.23(1)(e), Stats. 1989-90, the statute governing judicial review of LIRC's orders. Section 102.23(1)(e) provides that a court may set aside LIRC's orders or awards on the ground that "the commission acted without or in excess of its powers." If LIRC's interpretation of sec. 102.42(1), Stats. 1989-90, contravenes the words *507 of the statute, is clearly contrary to legislative intent, or is otherwise unreasonable or without rational basis, this interpretation will result in LIRC's acting "without or in excess of its powers," and this court will set aside LIRC's order.

III.
[4]
An agency's interpretation of a statute is reasonable if it accords with the language of the statute, the statute's legislative history, and the legislative intent; if the interpretation is consistent with the constitution, the statute read as a whole, and the purpose of the statute; and if the interpretation is consistent with judicial analyses of the statute.
[5]
Under sec. 102.42(1), Stats. 1989-90, employers have a continuing obligation to compensate employees for medical expenses incurred because of work-related injuries. The statute makes no exceptions to this obligation. It contains no suggestion that an employer's obligation to compensate for medical expenses continues only if LIRC has issued an order that expressly reserves jurisdiction over subsequent claims.
A reading of sec. 102.42(1) leads to the conclusion that an employee should be reimbursed for all medical expenses for her work-related condition and that reimbursement for medical expenses should not be stopped because LIRC's order was labeled as final rather than interlocutory. Implicit in the last sentence of sec. 102.42(1) is the suggestion that the Worker's Compensation Division would have jurisdiction to enforce the employer's obligation to pay for medical expenses for a work-related injury to maintain the employee's condition or to prevent deterioration of the condition, subject *508 to the statute of limitations provided in sec. 102.17(4), Stats. 1989-90.
LIRC contends, however, that the statute does not mean what it appears to say. LIRC argues that when sec. 102.42(1) is read with the legislative history and the remainder of chapter 102, it becomes clear that the legislature did not intend sec. 102.42(1) to permit the agency to direct payment of medical expenses after a final order.
We first examine the evolution of the statute. In 1911 Wisconsin passed the nation's first Worker's Compensation Act, with four principal objectives: 1) To furnish certain, prompt and reasonable compensation to the injured employee; 2) to utilize for employees a large portion of the great amount of money wasted under the liability system; 3) to provide a tribunal where disputes between employer and employee in regard to compensation may be settled promptly, cheaply and summarily; and 4) to provide means of minimizing the number of accidents in industrial pursuits. Workmen's Compensation Act pamphlet, Foreword 5-6 (1911).
In the original version of the Worker's Compensation Act, an employer's obligation to pay medical expenses for an employee who suffered a work-related injury was limited in time to the first ninety days following the employee's injury.[4]
*509 This provision was expanded in 1917 to include medical treatment after the ninety day period if the treatment would "tend to lessen the period of compensation disability."[5]
In 1919 the statute was amended to include medical treatment for such period of time as the Industrial Commission may deem it advisable in cases of permanent total disability.[6]
*510 Ten years later in 1929, the section was further amended to tie an employer's obligation to pay for medical expenses to "the period for which indemnity is payable." Section 102.09(1)(a), Stats. 1929.[7]
A 1937 amendment removed the ninety day limit and the other time limitations included in the previous statute, but still limited an employer's obligation to the *511 period for which indemnity was payable.[8] In its biennial Worker's Compensation Act pamphlet, n.35 (1937), the Industrial Commission explained the amended statute as follows:
This provision effected by Chapter 180, Laws of 1937, effective on May 29, 1937, provides for unlimited medical, surgical, and hospital treatment, etc., instead of treatment for 90 days, and so long thereafter as might reasonably be contemplated to reduce compensation liability. A Supreme Court decision raised doubt as to whether the previous law provided for unlimited treatment as had been thought by the Industrial Commission and acquiesced almost without exception by employers and insurance carriers.[9]
In 1943 the legislature amended sec. 102.42(1), eliminating from that section all time limitations for the payment of medical expenses.[10] The Industrial Commission's *512 biennial pamphlet explained the amended statute as follows:
Medical treatment when necessary is to be provided regardless of whether or not indemnity is payable or whether indemnity disability has ceased. Workman's Compensation Act pamphlet, n.53 (1943).
With the enactment of chapter 150, Laws of 1973, the current final sentence was added to sec. 102.42(1), stating that "[t]he obligation to furnish such treatment and appliances shall continue as required to prevent further deterioration in the condition of the employe or to maintain the existing status of such condition whether or not healing is completed." Section 102.42(1), Stats. 1973. In the 1974 biennial pamphlet (n.44), the annotation to sec. 102.42(1), as amended in 1973, states:
Medical treatment when necessary is to be provided regardless of whether or not indemnity is payable or whether indemnity disability has ceased. There is provision for payment of expense for treatment procured by an employe who does not learn until later of the nature of his disability, or its relation to employment. Formerly, no liability would have existed unless and until notice of injury had been given. In such cases as tuberculosis following silicosis, *513 this worked hardship on an employe who, although reasonably diligent, could not give notice of necessity for treatment because he had not yet learned the nature of his disability and its relation to employment. It is not intended that once there has been a proper fitting of a prosthesis that it be duplicated. Sec s. 102.42(6).
LIRC urges that we follow our prior cases and adhere to our practice of considering the biennial Worker's Compensation Act pamphlet as part of the statute's legislative history. Our prior cases have stated that the pamphlet is relevant in construing the statute because it includes the agency's interpretation of the statute. Pigeon v. ILHR Dep't, 109 Wis. 2d 519, 524, 326 N.W.2d 752 (1982); Green Bay Packaging, Inc. v. ILHR Dep't, 72 Wis. 2d 26, 34, 240 N.W.2d 422 (1976). We therefore give consideration to the pamphlet.
LIRC contends that if the 1973 addition to sec. 102.42(1) was meant to change the law to provide payment for medical expenses after a final order, the contemporaneous legislative history appearing in the pamphlet would contain a clear statement to that effect. Yet the legislative history is silent on this point.
LIRC further asserts that the legislative history shows that the last sentence of sec. 102.42(1), added by the 1973 amendment, was intended to disassociate the employer's continuing obligation to provide reimbursement from the healing period.[11] According to LIRC, the *514 1973 amendment had no effect on the nature of final and interlocutory orders.
[6]
We are not persuaded by this aspect of LIRC's argument. We do not derive the same message from the legislative history as LIRC does. Although the last sentence of sec. 102.42(1) refers to the healing period, the legislative history is silent about the healing period as such. The legislative history is likewise silent about the impact of final versus interlocutory orders on medical expenses. The legislative history, including the 1973 amendment, suggests to us that over the years the legislature has mandated increasingly broad medical coverage to injured workers. Nothing in the legislative history of the 1973 amendment leads us to think that sec. 102.42(1) has any effect other than that suggested by its plain language: Employers are required to pay medical expenses that employees incur from work-related injuries, subject to the statute of limitations. Implicit in this grant of a right is that the employee has a remedy available to enforce that right.
As a corollary to its argument about legislative history, LIRC contends that sec. 102.42(1) must be read together with and harmonized with sec. 102.18(1)(b). The latter section allows DILHR to issue interlocutory as well as final orders.[12]
*515 LIRC asserts that reading the two sections together reveals the legislature's intention that LIRC provide reimbursement for continuing medical expenses only when an interlocutory order has been entered. LIRC points out that the burden of proof a claimant must meet to persuade the agency to issue an interlocutory rather than a final order is very low. From this low burden of proof LIRC concludes that the ability to obtain an interlocutory order provides an adequate method of enforcing an employer's obligation to pay continuing medical expenses under sec. 102.42(1). Thus LIRC urges us to hold that the legislature did not intend sec. 102.42(1) to provide any method of reimbursing future medical expenses beyond the procedural technique of an interlocutory order.
We are not persuaded by this aspect of LIRC's argument. Nothing in the language of sec. 102.42(1) or in the legislative history suggests that the legislature intended to subject sec. 102.42(1) to the procedural constraints of sec. 102.18(1)(b). Despite the low burden of proof required to obtain an interlocutory order, even if there is no evidence at the initial hearing that future medical expenses will be incurred, an injured employee might still need treatment after a final order is issued. If this court were to accept LIRC's (and the court of appeals') interpretation of sec. 102.42(1), all agency orders would then need to be interlocutory rather than final to protect employees in case they should need future medical treatment, as the legislature requires in sec. 102.42(1).
LIRC concedes that Lisney sets forth strong equitable arguments in opposition to its interpretation of sec. 102.42(1). LIRC's Brief, p. 19. Lisney points out, for example, that because her claim was contested, the *516 nature of her disability and her disability benefits were determined by LIRC. According to LIRC under these circumstances, Lisney is not entitled to receive compensation for her continuing medical expenses. In contrast, had the insurance carrier and employer agreed upon her disability at the outset, her future medical expenses would be paid. LIRC's response to these equitable arguments is that Lisney must seek a statutory change from the legislature, not relief from the courts.
[7, 8]
We do not agree with LIRC's argument that equitable considerations are not relevant in determining whether we should read sec. 102.42(1) and sec. 102.18(1)(b) together. While a court cannot distort or ignore statutory language because of equitable arguments, equitable arguments can assist the court in interpreting the statutory language properly. In interpreting a statute, we assume that the legislature did not intend to enact an inequitable statute. LIRC's reading sec. 102.42(1) together with sec. 102.18(1)(b) not only reaches an inequitable result but also is contrary to the words of the statute, to the legislature's intent and to the legislative purpose of providing continuing medical benefits to employees for work-related injuries. Under these circumstances, the equitable argument supports Lisney's interpretation that the grant to LIRC of continuing jurisdiction to administer reimbursement of medical expenses is implicit in sec. 102.42(1).
LIRC also argues that if the legislature had intended sec. 102.42(1), Stats. 1973, to create an automatic reservation of jurisdiction on the issue of future medical expenses, it would have expressly provided for this procedure in the language of the statute. In support of its argument LIRC calls our attention to sec. 102.18(6), Stats. 1989-90, in which the legislature expressly provided *517 for an automatic reservation of agency jurisdiction in cases of occupational disease.[13]
We agree with LIRC that the legislature could have been more explicit in sec. 102.42(1) by adopting language similar to that in sec. 102.18(6). This aspect of the legislative history supports LIRC's interpretation of sec. 102.42(1). This factor standing alone, however, would not justify our ignoring the language of the statute and the legislative history and concluding that sec. 102.42(1) does not confer continuing jurisdiction on LIRC to hear applications for payment of medical expenses required to prevent further deterioration in the condition of the employee or to maintain the existing status of the employee's condition.
*518 LIRC's further argument, and the one adopted by the court of appeals, is that the finality principles set forth in Borum v. Industrial Comm'n, 13 Wis. 2d 570, 108 N.W.2d 918 (1961), and reaffirmed by the court of appeals in Kwaterski v. LIRC, 158 Wis. 2d 112, 462 N.W.2d 534 (Ct. App. 1990), control in this case.
In the Borum case, the plaintiff was awarded temporary disability benefits but his claim of permanent disability was denied at his hearing before the agency. After receiving the Industrial Commission's final order, the plaintiff filed a new claim seeking a finding of permanent disability status. The court held that an employee has only one cause of action for compensation for all injury and disability sustained as a result of an industrial accident and that the Commission had determined all compensation payable for all injuries caused by that accident when it made its final order. Borum, 13 Wis. 2d at 573. According to the Borum opinion, the Commission lacked jurisdiction to hear the plaintiff's second application for compensation, because it had issued a final order deciding his first application.
Similarly in the Kwaterski case, LIRC issued a final order awarding the plaintiff temporary and permanent partial disability benefits as well as medical payments for his work-related injury. The plaintiff subsequently filed a second and third application for redetermination of the percentage of permanent partial disability. The Commission determined that it had no jurisdiction to consider these new applications. Relying on the finality principles articulated in Borum, the court of appeals concluded in Kwaterski that "after the commission makes a final order and the period for review has expired, the commission's determination is final for all purposes." Kwaterski, 158 Wis. 2d at 118.
*519 LIRC describes the public policy basis for the Borum decision by stating, "`once it's over, it's over.' And it's over for each and every part of the claim." LIRC's Brief, p. 13.[14] The court of appeals in the present case adopted LIRC's analysis, interpreting the Borum case as standing for the principle that once the Commission has issued a final order on a particular accident, it "thereafter has no further jurisdiction to resume consideration of the consequences of the same accident," including the payment of further medical expenses. Lisney, 165 Wis. 2d at 636. The court of appeals concluded that LIRC's interpretation of sec. 102.42(1) resting on Borum and Kwaterski is "a reasonable conclusion and one that is not clearly contrary to the intent of the legislature." Lisney, 165 Wis. 2d at 634-635.
We disagree with LIRC's and the court of appeals' conclusion that the interpretation of sec. 102.42(1) is governed by Borum and Kwaterski. The principle of finality stated in Borum was not absolute even at the time that case was decided. Jurisdiction remained open after final orders in cases of industrial disease, in accordance with sec. 102.18(1), Stats. 1959. In addition, when Borum was decided, the final sentence of sec. 102.42(1) had not yet been adopted. Furthermore, in Kwaterski the court of appeals did not decide the applicability of finality principles to the continuing medical expenses covered by sec. 102.42(1), Stats. 1989-90. As Judge Sundby of the court of appeals pointed out in his dissent, neither Borum nor Kwaterski interpreted sec. 102.42(1). *520 Borum and Kwaterski remain good law, but they do not govern an employer's obligation to pay continuing medical expenses for treatment of a work-related injury under sec. 102.42(1).
[9]
Lastly, the parties urge us to look to the commentators on worker's compensation law to answer the question presented to us in this case. This court may look to authoritative interpretations of the worker's compensation act for assistance in the appropriate interpretation of the law.
Professor Arthur Larson's treatise suggests that over the past 35 years the states have moved to provide full medical coverage, evincing agreement that "unlimited medical benefits are economically the soundest benefit; that over the long term, they become the least expensive." 2 Arthur Larson, The Law of Workman's Compensation, sec. 61.11, at 10-810 (1992) (quoting Cheit, Injury and Recovery in the Course of Employment 42 (1961)). According to Larson's treatise, Wisconsin is one of 47 states in which the duration and amount of medical benefits are unlimited. Larson, supra, at 10-809. LIRC discounts the Larson treatise and cases from other jurisdictions cited therein, saying that decisions from other states are of little value in cases arising under Wisconsin worker's compensation law because of the differences in the various states' worker's compensation statutes.
John D. Neal and Joseph Danas, Jr., writing on the Wisconsin worker's compensation statute, conclude that sec. 102.42(1) provides for medical treatment with no time limit, except for the applicable statute of limitations. They write:
The insurance carrier is also liable for reasonable and necessary treatment "to prevent further deterioration *521 of the condition of the employee or to maintain the existing status of such condition whether or not healing is completed." Sec. 102.42(1) ... Such liability does not cease with the final payment of disability benefits, but is subject to sec. 102.17(4), Stats., which bars the filing of an application for hearing after 12 years from the last payment of compensation. John D. Neal and Joseph Danas, Jr., Worker's Compensation Handbook sec. 5.43, at 5-28 (3d ed. 1990).
Neal and Danas do not suggest that LIRC's final order negates an employer's statutory responsibility to pay continuing medical benefits. LIRC responds that this section of the Neal-Danas text does not discuss the effect of a final order on future claims and is therefore not germane to the issue before this court. LIRC refers us to those parts of the Neal-Danas text that discuss the Borum case and finality issues.
We conclude that these commentators support some aspects of each party's position, but they do not directly address the question of statutory interpretation before us. They are therefore not helpful in this case.
To summarize, under the construction urged by LIRC and adopted by the court of appeals, sec. 102.42(1) requires an employer to furnish continued benefits whenever needed, but does not allow LIRC to hear applications for such benefits after a final order has been entered. As Lisney points out in her brief and as Judge Sundby notes in his dissent, such a construction makes the last sentence of sec. 102.42(1) virtually meaningless. Lisney, 165 Wis. 2d 628 at 640 (Sundby, J. dissenting).
We conclude that LIRC's arguments about statutory interpretation fail to counteract the clear language of sec. 102.42(1). While LIRC's (and the court of appeals') reading of sec. 102.42(1) fosters finality and *522 supports the public policy underlying the worker's compensation actto provide certain, prompt, reasonable compensation to the injured employeeLisney's interpretation comports with the language of the statute, the legislative history and the basic purpose of the Worker's Compensation Actto provide financial and medical benefits to employees who are injured on the job "and to allocate the financial burden to the most appropriate source, the employer, and, ultimately the consumer of the product." Brenne v. ILHR Dep't, 38 Wis. 2d 84, 91-92, 156 N.W.2d 497 (1968), quoted with approval in Pigeon v. ILHR Dep't, 109 Wis. 2d 519, 525, 316 N.W.2d 117 (1981). See also 2 Arthur Larson, Workman's Compensation Law sec. 61.00, p. 10-809 (1992).
[10]
We therefore conclude that the only reasonable interpretation of sec. 102.42(1) is that it requires an employer to pay medical expenses even after a final order has been issued and that LIRC has jurisdiction to hear and determine applications for payment of medical expenses, even after a final order.
For the reasons set forth above, we reverse the decision of the court of appeals and remand the cause to LIRC for further proceedings consistent with this opinion.
By the Court.The decision of the court of appeals is reversed. The cause is remanded to the circuit court for remand to LIRC.
NOTES
[] Motion for reconsideration filed December 1, 1992.
[1] The final sentence was added to the statute by ch. 150, Laws of 1973.
[2] The parties have not cited cases in which LIRC has decided the precise issue before us. In Manitowoc County v. ILHR Dep't, 88 Wis. 2d 430, 276 N.W.2d 755 (1979), the court affirmed DILHR's finding about the need for future medical treatment because it was based on credible evidence. In that case DIHLR had reserved its jurisdiction on the issue of future treatment. The Manitowoc County case does not hold that a reservation of jurisdiction is the only way DIHLR can award future medical treatment.
[3] "[A]s to questions of law, we will not reverse a determination made by the enforcing agency where such interpretation is one among several reasonable interpretations that can be made, equally consistent with the purpose of the statute." De Leeuw v. ILHR Dep't, 71 Wis. 2d 446, 449, 238 N.W.2d 706 (1976).
[4] Section 2394-9(1), ch. 50, Laws of 1911, states in relevant part:

Where liability for compensation ... exists, the same shall be as provided in the following schedule: (1) Such medical and surgical treatment, medicines, medical and surgical supplies, crutches, and apparatus, as may be reasonably required at the time of the injury and thereafter during the disability, but not exceeding ninety days, to cure and relieve from the effects of the injury, the same to be provided by the employer; and in case of his neglect or refusal seasonably to do so, the employer to be liable for the reasonable expense incurred by or on behalf of the employee in providing the same....
[5] Section 2394-9(1), Stats. 1917, reads:

Where liability for compensation ... exists, the same shall be as provided in the following schedule: (1) Such medical, surgical and hospital treatment, medicines, medical and surgical supplies, crutches, and apparatus, as may be reasonably required for ninety days immediately following the accident, to cure and relieve from the effects of the injury, and for such additional period of time as in the judgment of the commission will tend to lessen the period of compensation disability, and, in addition thereto, such artificial members as may be reasonably necessary at the end of the healing period, the same to be provided by the employer; and in case of his neglect or refusal seasonably to do so, the employer to be liable for the reasonable expense incurred by or on behalf of the employee in providing the same....
[6] Section 2394-9, Stats. 1919, provides as follows:

Where liability for compensation ... exists, the same shall be as provided in the following schedule:
(1) Such medical, surgical and hospital treatment, medicines, medical and surgical supplies, crutches, and apparatus or, at the option of the employe, if the employer has not filed notice as hereinafter provided, Christian Science treatment in lieu of medical treatment, medicines and medical supplies, as may be reasonably required for ninety days immediately following the accident, to cure and relieve from the effects of the injury, and for such additional period of time as in the judgment of the commission will tend to lessen the period of compensation disability, or in the case of permanent total disability for such period of time as the commission may deem advisable, and, in addition thereto, such artificial members as may be reasonably necessary at the end of the healing period, the same to be provided by the employer; and in case of his neglect or refusal seasonably to do so, the employer to be liable for the reasonable expense incurred by or on behalf of the employe in providing the same....
[7] Section 102.09(1)(a), Stats. 1929, provides as follows:

102.09. Where liability for compensation ... exists, the same shall be as provided in the following schedule:
(1)(a) Such medical, surgical and hospital treatment, medicines, medical and surgical supplies, crutches, artificial members and appliances, or, at the option of the employe, if the employer has not filed notice as hereinafter provided, Christian Science treatment in lieu of medical treatment, medicines and medical supplies, as may be reasonably required for ninety days immediately following the accident, to cure and relieve from the effects of the injury, and for such additional period of time as in the judgment of the commission will tend to lessen the period of compensation disability, or in the case of permanent total disability for such period of time as the commission may deem advisable, not to exceed the period for which indemnity is payable, and in case of his neglect or refusal seasonably to do so, the employer to be liable for the reasonable expense incurred by or on behalf of the employe in providing the same.
In Levy v. Industrial Comm'n, 234 Wis. 670, 676, 291 N.W. 807 (1940), the court interpreted sec. 102.42(1), Stats. 1935, which is substantially the same as sec. 102.09(1)(a), Stats. 1929, as providing three different periods of time during which medical and hospital treatment should or might be required to be furnished. The first period is a 90-day period immediately following injury. The second period is beyond the 90 days and lasts for such period as in the judgment of the commission will tend to lessen the period of compensation disability. The third period is that in which permanent total disability exists. The Levy court interpreted the commission's order awarding the employee $10.50 per week as an allowance for medical and hospital care as being interlocutory rather than final because the injury employee was permanently disabled.
[8] Section 2, ch. 180, Laws of 1937, amended sec. 102.42(1), Stats. 1937, to read as follows:

The employer shall supply such medical, surgical and hospital treatment, medicines, medical and surgical supplies, crutches, artificial members and appliances, or, at the option of the employe, if the employer has not filed notice as hereinafter provided, Christian Science treatment in lieu of medical treatment, medicines and medical supplies, as may be reasonably required to cure and relieve from the effects of the injury, not to exceed the period for which indemnity is payable, and in case of his neglect or refusal seasonably to do so, the employer shall be liable for the reasonable expense incurred by or on behalf of the employe in providing the same.
[9] The decision referred to is A.D. Thomson Co. v. Industrial Comm'n, 222 Wis. 445, 268 N.W. 253 (1936).
[10] Section 21, ch. 270, Laws of 1943, amended sec. 102.42(1), to read as follows:

The employer shall supply such medical, surgical and hospital treatment, medicines, medical and surgical supplies, crutches, artificial members and appliances, or, at the option of the employe, if the employer has not filed notice as hereinafter provided, Christian Science treatment in lieu of medical treatment, medicines and medical supplies, as may be reasonably required to cure and relieve from the effects of the injury, and in case of his neglect or refusal seasonably to do so, the employer shall be liable for the reasonable expense incurred by or on behalf of the employe in providing the same. The employer shall also be liable for reasonable expense incurred by the employe for necessary treatment to cure and relieve him from the effects of occupational disease prior to the time that the employe knew or should have known the nature of his disability and its relation to employment, and as to such treatment the provisions of section 102.42(2) and (3) shall not apply.
[11] The healing period has been defined by the court as the period during which the process initiated by the injury has been arrested or has become stationary; the healing period ends when the injured worker has reached maximum improvement from the injury. Johnson v. Industrial Comm'n, 14 Wis. 2d 211, 109 N.W.2d 666 (1961); Mednicoff v. ILHR Dep't, 54 Wis. 2d 7, 17-18, 194 N.W.2d 670 (1972); Valadzic v. Briggs & Stratton Corp., 92 Wis. 2d 583, 588, 286 N.W.2d 540 (1979).
[12] Section 102.18(1)(b), Stats. 1989-90, states in relevant part:

Within 90 days after the final hearing and close of the record, the department shall make and file its findings upon the ultimate facts involved in the controversy, and its order, which shall state its determination as to the rights of the parties. Pending the final determination of any controversy before it, the department may in its discretion after any hearing make interlocutory findings, orders and awards which may be enforced in the same manner as final awards.
[13] Section 102.18(1)(b), Stats. 1989-90, states in relevant part:

Where there is a finding that the employe is in fact suffering from an occupational disease caused by the employment of the employer against whom the application is filed, a final award dismissing such application upon the ground that the applicant has suffered no disability from said disease shall not bar any claim he or she may thereafter have for disability sustained after the date of the award.
Section 102.18(6), Stats. 1989-90, states in relevant part:
In case of disease arising out of the employment, the department may from time to time review its findings, order or award, and make new findings, order or award, based on the facts regarding disability or otherwise as they may then appear....
In its biennial Worker's Compensation Act pamphlet, n.29 (1978), the Department interprets sec. 102.18(6) as follows:
Disability and required treatment from disease are often so unpredictable that an automatic reservation to review these cases seems desirable to prevent injustice. In all cases the statute of limitation forecloses further action. While the case is open, however, the time is extended as provided.
[14] John D. Neal and Joseph Danas, Jr., Worker's Compensation Handbook sec. 8.31, at 8-17 (3d ed. 1990), restates the Borum case as follows: "An accidental injury creates a single cause of action, and a final order determines all known and unknown aspects of the claim." The text does not, however, relate the Borum case to sec. 102.42(1).