¶ 73.
REBECCA GRASSL BRADLEY, J.
{concurring). Although I join the majority opinion, I write separately to question whether this court's practice of deferring to agency interpretations of statutes comports with the Wisconsin Constitution, which vests judicial power in this court—not administrative agencies. The Labor and Industry Review Commission (LIRC) asks this court to give "great weight" deference to its interpretation of the term "substantial fault" in Wis. Stat. § 108.04(5g)(a) (2013-14). Because "LIRC did not provide an articulated interpretation of § 108.04 in denying Operton unemployment benefits," the majority properly conducts an independent interpretation of § 108.04 without giving deference to LIRC. Majority op., ¶¶ 23-26. The doctrine of deference to agencies' statutory interpretation is a judicial creation that circumvents the court's duty to say what the law is and risks perpetuating erroneous declarations of the law. Because the court in this case fulfills its interpretive duty, I join the majority opinion but urge the court to reconsider its decades-long abdication of this core judicial function.
f 74. This court's current deference framework arises out of two cases from the mid-1990s. In Harnischfeger Corp. v. LIRC, 196 Wis. 2d 650, 539 N.W.2d 98 (1995), the court identified "three distinct levels of deference to agency interpretations: great weight, due weight and de novo review." Id. at 659-60 (citing Jicha *32 v. DILHR, 169 Wis. 2d 284, 290, 485 N.W.2d 256 (1992)). "Great weight" deference applies when four conditions are met:
(1) the agency was charged by the legislature with the duty of administering the statute; (2) Q the interpretation of the agency is one of long-standing; (3) [] the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) [] the agency's interpretation will provide uniformity and consistency in the application of the statute.
Id. at 660 (citing Lisney v. LIRC, 171 Wis. 2d 499, 505, 493 N.W.2d 14 (1992)). If an agency's interpretation of a statute qualifies for great weight deference, then the "interpretation must [] merely be reasonable for it to be sustained," and an interpretation is unreasonable only "if it directly contravenes the words of the statute, D is clearly contrary to legislative intent or [] is without rational basis." Id. at 661-62.
¶ 75. In UFE Inc. v. LIRC, 201 Wis. 2d 274, 548 N.W.2d 57 (1996), this court elaborated on the "due weight" deference standard. "Under the due weight standard, 'a court need not defer to an agency's interpretation which, while reasonable, is not the interpretation which the court considers best and most reasonable.' " Id. at 286 (quoting Harnischfeger, 196 Wis. 2d at 660 n.4). Courts give due weight deference when an agency has "some experience" interpreting a statute but not so much as to "develop [] the expertise which necessarily places it in a better position" than a court "to make judgments regarding the interpretation." Id. An agency lacking special knowledge or expertise nevertheless might receive some deference if "the legislature has charged the agency with the enforcement of the statute in question." Id. A court giving due weight deference to an agency interpretation "will not *33 overturn a reasonable agency decision that comports with the purpose of the statute unless the court determines that there is a more reasonable interpretation available." Id. at 286-87.
¶ 76. Examination of the pr^-Harnischfeger standard for reviewing agency interpretations of statutes suggests that the Harnischfeger court did not simply apply existing law—it recast it.[1] Before Harnischfeger, this court often articulated a slightly different standard of review: " [I] t is a well-established principle of statutory construction that the construction and interpretation of a statute adopted by an administrative agency charged with the duty of applying the law is entitled to great weight." Schwartz v. DILHR, 72 Wis. 2d 217, 221, 240 N.W.2d 173 (1976). Tracing that principle's development in Wisconsin law backwards from Harnischfeger leads to its source: Harrington v. Smith, 28 Wis. 43 (1871).[2]
¶ 77. Harrington presented this court with a dispute over the interpretation of a statute. Observing that "[t]he statute in question was enacted and has been *34 continuously interpreted, understood and acted upon by the executive department of the government, the officers appointed by law to carry its provisions into effect, ... for a period of over twenty-one years, and during twelve successive administrations of the state," the court concluded that "[g]reat weight is undoubtedly to be attached to a construction which has thus been given." Id. at 68-69. Accordingly, the Harrington court explained: "Long and uninterrupted practice under a statute, especially by the officers whose duty it was to execute it, is good evidence of its construction, and such practical construction will be adhered to, even though, were it res integra,[3) it might be difficult to maintain it." Harrington, 28 Wis. at 68. In support of that proposition, this court cited, among other authorities, Edwards' Lessee v. Darby, 25 U.S. (12 Wheat.) 206 (1827), which stated that, "[i]n the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect." Id. at 210.[4]
*35 ¶ 78. By recognizing the value of executive interpretations without entirely ceding interpretive authority to the executive, these older cases reflect a more nuanced appreciation for judicial interaction with agency interpretation than this court's post-Harnischfeger deference standards permit. The prevailing scheme of deference hamstrings a court of last resort—with self-imposed shackles—from independently interpreting the law, thereby thwarting the constitutional structure of dispersing power among the three branches of government. Because this structure has long been recognized as the essential safeguard of individual rights and liberty,[5] this court should reinforce that structure as a check against the concentra *36 tion of power in the executive branch. "The doctrine of separation of powers, a fundamental principle of American constitutional government, is embodied in the clauses of the Wisconsin Constitution providing that the legislative power shall be vested in a senate and assembly, the executive power in a governor . . . , and the judicial power in the courts." State v. Washington, 83 Wis. 2d 808, 816, 266 N.W.2d 597 (1978) (citations omitted). No less than in the federal system, in Wisconsin "[i]t is emphatically the province and duty of the judicial department to say what the law is." State v. Williams, 2012 WI 59, ¶ 36 n.13, 341 Wis. 2d 191, 814 N.W.2d 460 (quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803)); see also State ex rel. Wis. Senate v. Thompson, 144 Wis. 2d 429, 436-37, 424 N.W.2d 385 (1988).
¶ 79. Acknowledging respect for a longstanding interpretation of a statute is a far cry from a judicial doctrine of "great weight" deference that relinquishes the court's responsibility to independently interpret statutes. Equally troubling is the possibility that seven elected justices—or, indeed, any elected judge accountable to the people of Wisconsin—might give "great weight" deference to an agency decision by a single, unelected administrative law judge or hearing examiner against whom the people have no recourse. Administrative rulemaking already shifts some lawmaking power to unelected officials and away from the processes of passage and presentment contemplated by our constitution. Judicial deference to executive interpretations further widens the gap between the people and the laws that govern them.
f 80. The framers of our constitutions chose to disperse authority within the federal Republic and our state because they recognized that "[t]he accumulation *37 of all powers, legislative, executive, and judiciary, in the same hands . . . may justly be pronounced the very definition of tyranny." The Federalist No. 47 (James Madison) (Clinton Rossiter ed., 1961). As this court has recognized since Harrington, no harm comes to that separation when the judicial branch treats a well-developed executive interpretation of a statute as "some evidence of what the law is." Harrington, 28 Wis. at 69. But when the legislature delegates broad authority to an executive agency, which in turn interprets and enforces that delegated authority, the judiciary risks the liberty of all citizens if it abdicates its constitutional responsibility to check executive interpretations of the law. Because no such abdication occurs here, I join the majority opinion and respectfully concur.
¶ 81. I am authorized to state that Justices MICHAEL J. GABLEMAN and DANIEL KELLY join this concurrence.

 See, e.g., Lisney v. LIRC, 171 Wis. 2d 499, 505-06, 493 N.W.2d 14 (1992); West Bend Educ. Ass'n v. WERC, 121 Wis. 2d 1, 12, 357 N.W.2d 534 (1984); Pigeon v. DILHR, 109 Wis. 2d 519, 524-25, 326 N.W.2d 752 (1982); Schwartz v. DILHR, 72 Wis. 2d 217, 221, 240 N.W.2d 173 (1976); City of Milwaukee v. WERC, 43 Wis. 2d 596, 599-601, 168 N.W.2d 809 (1969); Mednis v. Indus. Comm'n, 27 Wis. 2d 439, 444, 134 N.W.2d 416 (1965); Trczyniewski v. City of Milwaukee, 15 Wis. 2d 236, 240, 112 N.W.2d 725 (1961).

 Latin for "an entire thing," as a legal term res integra refers to an "undecided question of law" or a "case of first impression." Res Integra, Black's Law Dictionary 1503 (10th ed. 2014) (citing Res Nova, id. at 1504).

 In Chevron U.S.A. Inc. v. Natural Resources Defense Counsel, Inc., 467 U.S. 837 (1984), the Supreme Court also cited Edwards' Lessee v. Darby, 25 U.S. (12 Wheat.) 206 (1827), among many other cases, when constructing the two-step framework that has become the cornerstone of judicial review of agency determinations at the federal level. Chevron, 467 U.S. at 844 n.14. Although I will not, in this writing, endeavor to conduct a comprehensive review comparing federal agency deference to Wisconsin law, it suffices for now to note that federal administrative deference under Chevron seems to raise *35 separation of powers concerns under the United States Constitution similar to those I identify in Wisconsin. See, e.g., Michigan v. EPA, 135 S. Ct. 2699, 2712 (2015) (Thomas, J., concurring) (arguing that transferring "ultimate interpretive authority" to the Executive "is in tension with Article Ill's Vesting Clause, which vests the judicial power exclusively in Article III courts, not administrative agencies"); City of Arlington v. FCC, 133 S. Ct. 1863, 1879 (2013) (Roberts, C.J., dissenting) ("It would be a bit much to describe the result as 'the very definition of tyranny,' but the danger posed by the growing power of the administrative state cannot be dismissed."); see also Gutierrez-Brizuela v. Lynch, 834 F.3d 1142, 1152 (10th Cir. 2016) (Gorsuch, J., concurring) ("Transferring the job of saying what the law is from the judiciary to the executive unsurprisingly invites the very sort of due process (fair notice) and equal protection concerns the framers knew would arise if the political branches intruded on judicial functions.").

 "In the compound republic of America, the power surrendered by the people is first divided between two distinct governments, and then the portion allotted to each subdivided among distinct and separate departments. Hence a double security arises to the rights of the people." The Federalist No. 51 (James Madison) (Clinton Rossiter ed., 1961).