HARNISCHFEGER CORPORATION, Plaintiff-Respondent-Cross Petitioner,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Co-Appellant-Petitioner,

Guenther GIESKE, Defendant-Appellant-Petitioner. [Case No. 93–0947.]

HARNISCHFEGER CORPORATION, Plaintiff-Respondent-Cross Petitioner,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Co-Appellant-Petitioner,

Edward BOHN, Defendant-Appellant-Petitioner. [Case No. 93–0948.]

HARNISCHFEGER CORPORATION, Plaintiff-Respondent-Cross Petitioner,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Co-Appellant-Petitioner,

Emmerich DRAWITSCH, Defendant-Appellant-Petitioner. [Case No. 93–0949.]

Supreme Court

*Nos. 93–0947, 93–0948, 93–0949. Oral argument September 6, 1995.—Decided October 24, 1995.*

650

(Also reported in 539 N.W.2d 98.)

651

For the defendants-appellants-petitioners there were briefs by *David L. Weir* and *Zubrensky, Padden, Horwitz & Weir,* Milwaukee and oral argument by *David L. Weir.*

For the defendant-co-appellant-petitioner the cause was argued by *Richard Briles Moriarty,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the plaintiff-respondent-cross petitioner there were briefs by *Thomas M. Rohe* and *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.,* Milwaukee and oral argument by *Thomas M. Rohe.*

Amicus curiae brief was filed by *Michael H. Gillick* and *Murphy, Gillick, Wicht, & Prachthauser,* Milwaukee for Wisconsin Academy of Trial Lawyers.

Amicus curiae brief was filed by *Philip Lehner* and *Capwell & Berthelsen,* Brookfield, for Wisconsin Manufacturers and Commerce.

Amicus curiae brief was filed by *Joseph R. Long, II* and *Relles, Meeker & Borns* and *Betsy J. Abramson* and *Elder Law Center,* all of Madison, for Elder Law Center of the Coalition of Wisconsin Aging Groups.

DONALD W. STEINMETZ, J.   This is a review of a decision of the court of appeals affirming an order of the circuit court for Milwaukee county, Richard G. Harvey, Jr., Reserve Judge, which concluded that the Labor and Industry Relations Commission's (LIRC) interpretation of Wis. Stat. § 102.555(8) (1993-94)[1] directly contravenes the plain language of the statute and was therefore not to be granted deference. We conclude that LIRC's interpretation does not contravene

[1] Note that all further reference to Wis. Stats. will be to the 1993-94 version.

the plain language of the statute because § 102.555(8) is ambiguous. Since LIRC's interpretation is otherwise reasonable, it should have been accorded the appropriate deference. As such, we reverse the decision of the court of appeals.

Guenther Gieske, Edward Bohn and Emmerich Drawitsch all suffered hearing loss during the course of their employment with Harnischfeger Corporation. It is undisputed, however, that each had prior, though less severe, hearing loss before they began their employment with Harnischfeger.

LIRC determines compensation awards for hearing loss by looking to the various subsections of Wis. Stat. § 102.555. Specifically germane to this case is subsection (8) which discusses the treatment of hearing loss occurring prior to employment. It reads:

> 102.555    **Occupational    deafness; definitions.**
> . . . .
> **(8)** An employer is liable for the entire occupational deafness to which his or her employment has contributed; but if previous deafness is established by a hearing test or other competent evidence, whether or not the employe was exposed to noise within the 2 months preceding such test, the employer is not liable for previous loss so established nor is the employer liable for any loss for which compensation has previously been paid or awarded.

LIRC has historically taken the position that the same definition which is applied to the phrase "occupational deafness" in this subsection should also be applied to the phrase "previous deafness." Wisconsin Statutes § 102.555(1), the applicable definitional subsection, defines "occupational deafness" as "loss of hearing," but

does not specifically define "previous deafness." For further guidance, LIRC appropriately looked to the administrative code for an interpretation of "loss of hearing." The Department of Industry, Labor and Human Relations (DILHR), through proper administrative rule-making procedures, determined 40 years ago that loss of hearing is not compensable under Wisconsin's Worker's Compensation Act until a person has suffered a loss exceeding 30 decibels.[2] *See* Wis. Admin. Code § Ind 80.25.

LIRC applied this definition to both "occupational deafness" and "previous deafness" in determining the compensation awards of Gieske, Bohn and Drawitsch. Harnischfeger petitioned, under Wis. Stat. § 102.333, for judicial review of LIRC's decisions. The circuit court found that LIRC's methodology held employers responsible for all hearing loss between 0 and 30 decibels even if such loss was not caused by employment. Although the trial court recognized that deference to LIRC was otherwise appropriate, it held that LIRC's interpretation contravened the clear meaning of the statute. As such, it did not accept LIRC's interpretation, but instead applied Harnischfeger's proposed formula in determining the awards. The court of appeals affirmed the circuit court's holding that LIRC's formula was invalid since it directly contravened the words of the

---

[2] Although a human has a theoretical range of 0 to 130 decibels, DILHR decided, after extensive research and discussion, that hearing loss of less than 30 decibels was not significant from a "real world" perspective. It also decided that hearing loss greater than 93 decibels has no practical significance since a 93 decibel loss equates to a 100 percent loss of hearing. As a result of these conclusions, DILHR constructed a compensation scheme based upon a practical loss scale of 31-93 decibels.

statute, but disagreed with its methodology. *See Har-nischfeger Corp. v. LIRC*, 184 Wis. 2d 227, 230, 517 N.W.2d 193, 195 (Ct. App. 1994). It went on to determine the employees' awards under an entirely different formula. *See id.*

In order to understand why this seemingly straightforward exercise of agency discretion so concerned the courts below, it is necessary to briefly discuss how LIRC's methodology works in practice. According to LIRC, an employee is not compensated for the first 30 decibels of loss of hearing. For every decibel loss above 30, however, an employee is considered to have 1.6 percent occupational deafness.[3] The percentages increase at a rate of 1.6 percent per decibel up to a maximum of a 93 decibel loss. At this point the person is considered to have reached 100 percent occupational deafness. *See* Wis. Admin. Code § Ind 80.25. For example, an employee who starts work with a 25 decibel loss and leaves work with a 40 decibel loss is compensated for the entire loss over 30 by his employer, 10 decibels, which equates to 16 percent occupational deafness. This is regardless of whether the employee's original 25 decibel loss was caused by prior employment, other causes or a natural defect.

Under LIRC's scheme, however, employers do receive a credit if an employee begins work with hearing loss greater than 30 decibels. Therefore, if the employee started with a loss of 35 decibels, the employer would receive a five decibel credit. Thus, the employee's compensable hearing loss percentage would be 16 percent for the 40 decibel loss minus eight per-

---

[3] Therefore, a person with a decibel loss of 30 has 0 percent occupational deafness, while a person with a decibel loss of 32 has 3.2 percent occupational deafness.

cent for the prior 35 decibel loss for a sum of eight percent or a five decibel loss.

The circuit court, the court of appeals and Harnischfeger contend that this interpretation makes an employer liable for all of an employee's deafness and not just the "occupational deafness" to which it has contributed. They assert that the employer in the last example (35 beginning decibel loss, 40 ending decibel loss) is actually being held liable for the entire 40 decibels of loss, even though only a five decibel loss was caused by employment. However, this is clearly incorrect. If the employer was actually responsible for the entire loss, a 40 decibel loss should translate into occupational deafness of 31 percent (40/130) representing the percentage of hearing lost by the individual on a scale of 0-130, the theoretical range of human hearing. The employer under LIRC's method, however, is actually liable for much less—$1.6 \times 5$ decibels which equates to only eight percent occupational deafness.

Whether or not a court agrees or disagrees with LIRC's methodology, however, is not the issue in this case. Instead, the central question is what standard of review the courts of this state should apply when called upon to evaluate an agency's interpretation of a statute. The guiding principle is that statutory interpretation is a question of law which courts decide *de novo. See Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 758, 300 N.W.2d 63, 68 (1981). Furthermore, a court is not bound by an agency's interpretation of a statute. *See State ex rel. Parker v. Sullivan*, 184 Wis. 2d 668, 699, 517 N.W.2d 449, 460 (1994). As important, however, is the principle that courts should defer to an administrative agency's interpretation of a statute in certain situations. This court has applied three distinct

levels of deference to agency interpretations: great weight, due weight and *de novo* review.[4] *See Jicha v. DILHR*, 169 Wis. 2d 284, 290, 485 N.W.2d 256, 258-59 (1992). Great weight deference is appropriate once a court has concluded that: (1) the agency was charged by the legislature with the duty of administering the statute; (2) that the interpretation of the agency is one of long-standing; (3) that the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) that the agency's interpretation will provide uniformity and consistency in the application of the statute. *See Lisney v. LIRC*, 171 Wis. 2d 499, 505, 493 N.W.2d 14, 16 (1992).

To the extent the circuit court and the court of appeals found that some level of deference was applicable to LIRC's interpretations, they were correct. Although neither lower court so stated, it is clear under the standards set forth in *Lisney* that LIRC's interpretation was entitled to great weight deference. LIRC and its predecessors have long been charged with the duty of administering Chapter 102 and have exercised their expertise in analyzing and interpreting its various sections for over 80 years. *See, e.g., Pendzich v. Industrial Comm.*, 11 Wis. 2d 531, 532-33, 105 N.W.2d 781, 782-83 (1960); *Discher v. Industrial Comm.*, 10

---

[4] When *de novo* review is appropriate under the standards set forth by this court, a court decides the issue without according the agency's interpretation any weight. If an agency decision is, however, accorded some deference under the due weight standard, *Beloit Education Asso. v. WERC*, 73 Wis. 2d 43, 67-68, 242 N.W.2d 231, 242-43 (1976), a court need not defer to an agency's interpretation which, while reasonable, is not the interpretation which the court considers best and most reasonable. *See Whitefish Bay v. Wisconsin E. R. Board*, 34 Wis. 2d 432, 445, 149 N.W.2d 662, 664 (1967).

Wis. 2d 637, 640, 103 N.W.2d 519, 520-21 (1960); *Janiszewski v. Industrial Comm.*, 9 Wis. 2d 171, 176-77, 100 N.W.2d 347, 348-49 (1960); *General Castings Corp. v. LIRC*, 152 Wis. 2d 631, 633, 449 N.W.2d 619, 620 (Ct. App. 1989); *A.O. Smith Corp. v. Oglesby*, 108 Wis. 2d 583, 584-85, 323 N.W.2d 143, 144 (Ct. App. 1982). Furthermore, both Wis. Stat. § 102.555 and the administrative rules which interpreted § 102.555 had—prior to LIRC's decisions in this proceeding—been the subject of active and careful consideration by both the legislature and DILHR. *See, e.g., A.O. Smith Corp.*, 108 Wis. 2d at 584-85. Finally, LIRC has consistently interpreted § 102.555(8) so as to provide uniformity in the application of Chapter 102.

Once it is determined under *Lisney* that great weight deference is appropriate, we have repeatedly held that an agency's interpretation must then merely be reasonable for it to be sustained. *See Lisney*, 171 Wis. 2d at 506; *Sauk County v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991); *Beloit Education Asso. v. WERC*, 73 Wis. 2d 43, 67, 242 N.W.2d 231, 242-43 (1976). This standard of review of LIRC's decisions is also dictated by statute. *See* Wis. Stat. § 102.23(1)(e); *Lisney*, 171 Wis. 2d at 506. The burden of proof to show that the agency's interpretation is unreasonable is on the party seeking to overturn the agency action; it is not on the agency to justify its interpretation. *See, e.g., Weibel v. Clark*, 87 Wis. 2d 696, 704, 275 N.W.2d 686, 690, *cert. denied*, 444 U.S. 834 (1979); *Racine Education Ass'n. v. Com'r of Ins.*, 158 Wis. 2d 175, 182, 462 N.W.2d 239, 242 (Ct. App. 1990); *City of La Crosse v. DNR*, 120 Wis. 2d 168, 178, 353 N.W.2d 68, 73 (Ct. App. 1984).

An interpretation is unreasonable if it directly contravenes the words of the statute, it is clearly contrary to legislative intent or it is without rational basis. *See Parker*, 184 Wis. 2d at 700; *Lisney*, 171 Wis. 2d at 506. It is in applying this test of reasonableness that the trial court and the court of appeals erred. Specifically, the lower courts incorrectly determined that LIRC's interpretation directly contravened the words of the statute.

There seems to be some confusion among the lower courts, and the parties in this case, regarding exactly when an agency's interpretation directly contravenes the clear meaning of a statute. The threshold question must be whether or not the statute in question is ambiguous. If the statute is ambiguous, an agency's interpretation cannot, by definition, be found to directly contravene it.[5] It is axiomatic in this state that a statutory provision is ambiguous if reasonable minds could differ as to its meaning. *See, e.g., Hauboldt v. Union Carbide Corp.*, 160 Wis. 2d 662, 684, 467 N.W.2d 508, 517 (1991); *Girouard v. Jackson Circuit Ct.*, 155 Wis. 2d 148, 155, 454 N.W.2d 792, 795 (1990). Although the mere fact that two parties interpret a statute differently does not in itself create an ambiguity, it is clear in this situation that the word in question, "deafness," is subject to many sensible interpretations. In fact, each agency or court which has attempted to construe the statute in question has set forth dramatically different, yet equally reasonable, interpretations. This, the ability of a statute to support more than one reasonable interpretation, is the hallmark of ambiguity. *See*

[5] This, of course, does not preclude the agency's interpretation from being unreasonable for other reasons.

*Girouard*, 155 Wis. 2d at 155. It was, therefore, incorrect to conclude that LIRC's interpretation directly contravened the statute.

■

It is equally clear that LIRC's interpretation is not otherwise unreasonable. There is no evidence that its interpretation directly contravenes legislative intent or that it is not rationally based. DILHR and LIRC have many years of experience in determining compensation awards for hearing loss cases and in interpreting the applicable statutes. The determination by DILHR that employees are only compensated, and employers only gain credit for, hearing loss greater than 30 decibels is eminently rational considering the careful development of Wis. Admin. Code § Ind 80.25. This is the very type of conclusion which requires the specialized knowledge and expertise administrative agencies were created to provide. Furthermore, LIRC's practice of attributing the same definition to a word both times it is used in the same statute follows another basic principle of statutory construction. *See General Castings Corp. v. Winstead*, 156 Wis. 2d 752, 759, 457 N.W.2d 557, 561 (Ct. App. 1990). In light of this evidence, the reasonableness of LIRC's interpretation cannot be in contention.

■

When, as in this case, great weight deference is appropriate *and* the agency's interpretation is not otherwise unreasonable, "the court of appeals and this court should refrain from substituting their interpretation of [a] statute for the long-standing interpretation of the agency charged with its administration." *Parker*, 184 Wis. 2d at 703. "The agency's conclusion of law will be sustained . . . even if an alternative is equally reasonable." *DILHR v. LIRC*, 161 Wis. 2d 231, 246, 467

N.W.2d 545, 550 (1991). *See also West Bend Education Ass'n v. WERC*, 121 Wis. 2d 1, 13-14, 357 N.W.2d 534, 540 (1984). LIRC's interpretation of Wis. Stat. § 102.555(8) should therefore be sustained.

*By the Court.*—The decision of the court of appeals is reversed.