LOCAL 441A, WISCONSIN PROFESSIONAL POLICE
ASSOCIATION, Law Enforcement Employee
Relations Division, Petitioner-Respondent,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Respondent-Appellant,

DOUGLAS COUNTY, Intervenor-Co-Appellant.

Court of Appeals

No. 2012AP2721. *Submitted on briefs May 3, 2013.*
*—Decided July 25, 2013.*

2013 WI App 104

(Also reported in 837 N.W.2d 168.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *David C. Rice*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the intervenor-co-appellant, the cause was submitted on the briefs of *Ryan J. Steffes* and *Mindy K. Dale of Weld, Riley, Prenn & Ricci, S.C.*, Eau Claire.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Roger W. Palek*, Madison.

Before Lundsten, P.J., Sherman and Blanchard, JJ.

¶ 1. LUNDSTEN, P.J. The question before us is whether Douglas County jailers, who work for the Douglas County Sheriff's Department, are "public safety employees" within the meaning of the Municipal Employment Relations Act (MERA), as amended by 2011 Wis. Act 10.[1] The answer to this question determines whether the jailers have retained their pre-2011 bargaining rights or, instead, are among the large majority of public employees whose bargaining rights were substantially reduced by the 2011 amendments to MERA.

¶ 2. The Wisconsin Employment Relations Commission appeals, and Douglas County co-appeals, a decision of the circuit court reversing the Commission's decision regarding the status of the Douglas County jailers under MERA and, in particular, under WIS. STAT. § 111.70 (2011–12).[2] The Commission determined that, under § 111.70(1)(mm), the Douglas County jailers are not "public safety employees" because they are not both "protective occupation participants" under WIS. STAT. § 40.02(48)(a) and "deputy sheriffs" within the meaning of § 40.02(48)(am)13. and (b)3. The circuit court disagreed. We agree with the circuit court that the plain language of the statute yields the result that the jailers here are "public safety employees" because they are "protective occupation participants" and they are "deputy sheriffs" within the meaning of § 40.02(48)(b)3. We thus affirm.

---

[1] Parts of WIS. STAT. § 111.70, the MERA statute at issue here, were also amended by 2011 Wis. Act 32 subsequent to being amended by 2011 Wis. Act 10, but Act 32 did not change the statutory language relevant to this appeal.

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

## Background

¶ 3. On June 29, 2011, Douglas County (the "County") petitioned the Wisconsin Employment Relations Commission (the "Commission") for a declaratory ruling that jailers employed by Douglas County (the "jailers") who are represented by Local 441A, Wisconsin Professional Police Association (the "Union"), are not "public safety employees" within the meaning of WIS. STAT. § 111.70(1)(mm).

¶ 4. After a hearing, the Commission determined that the jailers are not "public safety employees" within the meaning of WIS. STAT. § 111.70(1)(mm) because, although they are "protective occupation participants" pursuant to WIS. STAT. § 40.02(48)(a), they are not "deputy sheriffs" under § 40.02(48)(am)13. and (b)3. The Commission determined that the jailers are, instead, "general municipal employees" under § 111.70(1)(fm). The Commission, therefore, issued a declaratory ruling that the County did not have a duty to bargain with the Union over any factor or condition of employment other than total base wages of the jailers. The Union sought judicial review of the Commission's decision.

¶ 5. The circuit court reversed the Commission's decision, concluding that the plain language of WIS. STAT. § 40.02(48)(am)13. and (b)3. dictates that the jailers are "deputy sheriffs" and are, therefore, also "public safety employees" under WIS. STAT. § 111.70(1)(mm). The circuit court therefore determined that the County must bargain with the Union over compensation (in addition to total base wages), hours, and conditions of employment of the jailers as "public safety employees."

¶ 6. The Commission appeals the decision of the circuit court, and the County co-appeals.[3]

---

[3] Douglas County originally moved to intervene but, because

## *Standard Of Review*

¶ 7. "In deciding an appeal from a circuit court's order affirming or reversing an administrative agency's decision, we review the decision of the agency, not that of the circuit court." *Mattila v. Employe Trust Funds Bd.*, 2001 WI App 79, ¶ 8, 243 Wis. 2d 90, 626 N.W.2d 33. The threshold question in reviewing an administrative agency's decision is what level of deference we are to accord to the agency's decision. *Id.* There are three levels of deference applied to agency decisions: great weight, due weight, and de novo review. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659–60, 539 N.W.2d 98 (1995).

¶ 8. All of the parties to this appeal agree that, because the Commission is not tasked with administering Wis. Stat. § 40.02, we need not accord the Commission's declaratory ruling any degree of deference. Accordingly, we review the Commission's decision de novo.[4]

---

Wis. Stat. § 227.53(2) permits every party to the proceedings before the Commission to participate in the judicial review proceeding simply by filing and serving a timely notice of appearance and statement of position, intervention was not necessary. The Commission and the Union appear to agree that the County was not required to intervene in order to be a party to this proceeding.

[4] The County argues that, although we need not defer to the Commission's decision interpreting Wis. Stat. § 40.02, we must defer to prior decisions of the agency charged with administering that statute, the Employee Trust Funds Board (the Board). The County points to a decision that predates this controversy in which the Board interpreted the term "deputy sheriffs" in § 40.02(48)(am)13. as not including jailers. The County argues that, because the Board is the agency tasked with administering § 40.02, we must accord great weight deference to this decision.

## Discussion

¶ 9. The issue on appeal is whether the Douglas County jailers are "public safety employees" within the meaning of WIS. STAT. § 111.70(1)(mm) or, instead, are "general municipal employees" under § 111.70(1)(fm). As indicated above, this matters because the different types of employees have substantially different bargaining rights. The parties agree that whether the jailers are "public safety employees" is determined by whether they are both "protective occupation participants" and "deputy sheriffs" under WIS. STAT. § 40.02(48)(a) and (am). *See* § 111.70(1)(mm).

¶ 10. The rules of statutory construction are well settled. The supreme court has explained:

> [W]e have repeatedly held that statutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning.
>
> Context is important to meaning. So, too, is the structure of the statute in which the operative language

---

We need not decide this issue. Even if we were to accord great weight deference to the Board's construction of "deputy sheriff" as defined by the statutes at issue here, we would still conclude that the only reasonable interpretation is that the jailers here are "deputy sheriffs." As we will see, we conclude that an interpretation of "deputy sheriff" that does not include the jailers in this case directly contravenes the words of the statute and is, therefore, unreasonable. *See Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 662, 539 N.W.2d 98 (1995) ("An interpretation is unreasonable if it directly contravenes the words of the statute, it is clearly contrary to legislative intent or it is without rational basis.").

appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results. Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." Where statutory language is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history. "In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute."

*State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶¶ 45–46, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted).

¶ 11. The parties' dispute here focuses largely on WIS. STAT. § 40.02(48)(b)3., but we briefly explain the larger statutory scheme.

### A. Statutory Structure

¶ 12. As amended by 2011 Wis. Act 10, WIS. STAT. § 111.70 distinguishes between municipal "public safety employees" and "general municipal employees" for purposes of collective bargaining. "Public safety employees" retain the right to bargain over wages, compensation, hours, and conditions of employment, while "general municipal employees" may bargain only over total base wages. WIS. STAT. § 111.70(1)(a) and (4)(mb). And, even as to wages, the bargaining rights of "general municipal employees" are inferior to those of "public safety employees." *See* § 111.70(4)(mb)2.

¶ 13. As pertinent to this appeal, a "public safety employee" is defined as

725

any municipal employee who is employed in a position that, on July 1, 2011, is one of the following:

> 1. Classified as a protective occupation participant under any of the following:

> a. Section 40.02(48)(am)9., 10., 13. [deputy sheriff], 15., or 22.

WIS. STAT. § 111.70(1)(mm).

¶ 14. Turning to the cross-reference in § 111.70(1)(mm) to ch. 40, WIS. STAT. § 40.02(48)(a) provides:

> "Protective occupation participant" means any participant whose principal duties are determined by the participating employer, or, subject to s. 40.06(1)(dm), by the department head in the case of a state employee, to involve active law enforcement or active fire suppression or prevention, provided the duties require frequent exposure to a high degree of danger or peril and also require a high degree of physical conditioning.

Here, it is undisputed that the jailers have been determined by the County to have qualifying active law enforcement duties, such that the jailers are "protective occupation participants" under this subsection.

¶ 15. Next, WIS. STAT. § 40.02(48)(am) states that " '[p]rotective occupation participant' includes any participant whose name is certified to the [employee trust] fund as provided in s. 40.06(1)(d) and (dm) and who is" included in one of 22 identified positions. As the quote above from WIS. STAT. § 111.70(1)(mm) demonstrates, of these 22 positions listed in § 40.02(48)(am), only five of them are eligible to be treated as "public safety employees." The potentially qualifying position at issue here is "deputy sheriff," found in § 40.02(48)(am)13.

¶ 16. The Union argued, and the circuit court agreed, that the jailers here fit the definition of "deputy sheriff" found in § 40.02(48)(b)3. As pertinent here, that definition reads:

> A "deputy sheriff" ... is any ... employee of a sheriff's office ..., except one whose principal duties are those of a telephone operator, clerk, stenographer, machinist or mechanic and whose functions do not clearly fall within the scope of active law enforcement even though such an employee is subject to occasional call, or is occasionally called upon, to perform duties within the scope of active law enforcement. Deputy sheriff ... includes any person regularly employed and qualifying as a deputy sheriff ..., even if temporarily assigned to other duties.

WIS. STAT. § 40.02(48)(b)3.

### B. *Whether The Jailers Are Deputy Sheriffs*

¶ 17. The Union argues that the circuit court was correct in concluding that, under the plain language of WIS. STAT. § 40.02(48)(am)13. and (b)3., the jailers are "deputy sheriffs." Although for different reasons, both the County and the Commission focus on § 40.02(48)(b)3., and argue that the jailers are not "deputy sheriffs" within the meaning of that statute.

¶ 18. The Union argues that, under the plain language of § 40.02(48)(b)3., the jailers are "deputy sheriffs." It is undisputed, so far as we can tell, that the jailers fit the first sentence of the definition of "deputy sheriff" contained in that statute. The jailers are employed by the sheriff's office, and none have principal duties as a telephone operator, clerk, stenographer, machinist, or mechanic. The Union contends that the jailers are not excluded by the second sentence of § 40.02(48)(b)3. be-

727

cause this sentence merely explains that an employee that otherwise qualifies as a "deputy sheriff" remains so even if he or she is temporarily assigned to non-law enforcement duties.

¶ 19. We agree with the Union. As explained above, the "participating employer," the County, has classified the jailers as protective occupation participants pursuant to § 40.02(48)(a) and, thus, it has been determined that the jailers' "principal duties . . . involve active law enforcement . . . [and those duties] require frequent exposure to a high degree of danger or peril and also require a high degree of physical conditioning." Thus, our interpretation and application of § 40.02(48)(b)3. starts with a group of employees whose principal duties involve active law enforcement. This is important because, without this limitation, sheriff's office employees, such as janitors, might fit the definition of "public safety employee."

¶ 20. Starting, then, with active law enforcement employees, § 40.02(48)(b)3. does not impose an additional substantial requirement for purposes of determining which employees are deputy sheriffs and, therefore, "public safety employees." The subsection states that a " 'deputy sheriff' . . . *is any . . . employee of a sheriff's office,"* with specific exceptions. WIS. STAT. § 40.02(48)(b)3. (emphasis added). The excepted employees are those "whose principal duties are those of a telephone operator, clerk, stenographer, machinist or mechanic and whose functions do not clearly fall within the scope of active law enforcement." *Id.* Obviously, the jailers in this case are sheriff's office employees, and they do not have a job that falls into one of the excepted categories.

¶ 21. Accordingly, when we track through this limited statutory scheme and apply it to the jailers at

issue here, the plain language yields the result that the jailers here are "public safety employees" because they are "protective occupation participants" and they fit the definition of "deputy sheriffs" found in § 40.02(48)(b)3. We now turn our attention to the Commission's and the County's specific contrary arguments.

### 1. The Commission's Arguments

¶ 22. The Commission concedes that, under the first sentence of Wis. Stat. § 40.02(48)(b)3., the jailers would meet the definition of "deputy sheriff." The Commission argues, however, that the jailers fail to meet the requirements of the second sentence of § 40.02(48)(b)3. because they do not "qualify as" deputy sheriffs.[5] The Commission argues that the Union's interpretation of § 40.02(48)(b)3. effectively removes the words "qualifying as" from the second sentence and treats these words as superfluous, contrary to the rule of statutory construction that courts are to give effect to every word of a statute, if possible, so that no portion of the statute is rendered superfluous. *See State ex rel. Reimann v. Circuit Court for Dane Cnty.*, 214 Wis. 2d 605, 619, 571 N.W.2d 385 (1997).

¶ 23. In order to give meaning to the phrase "qualifying as," the Commission reads into § 40.02(48)(b)3. the

---

[5] The Commission appears to have abandoned an argument that it made before the circuit court that the term "deputy sheriff" is self-defining and must include formal deputization. The abandonment of this argument is appropriate. While we agree that, intuitively, a "deputy sheriff" signifies some form of deputization, the legislature was free to define the term "deputy sheriff" without formal deputization requirements for purposes of Wis. Stat. § 40.02(48)(am)13. and (b)3. As the circuit court aptly explained: "The legislature may define any term any way it sees fit for whatever constitutionally legitimate purpose it wants, whether the term is 'largely self-defining' or not."

formal requirements of Wis. Stat. § 59.26, which outlines the process for deputization. The Commission argues that, because § 40.02(48)(b)3. does not define the phrase "qualifying as," it is reasonable to look to § 59.26 as the "single, most relevant statute relating to appointment of county deputy sheriffs in Wisconsin." Applying § 59.26 to the definition of deputy sheriff in § 40.02(48)(b)3., the Commission argues that only those jailers who have been appointed by the sheriff and who have taken the official oath, which the sheriff then files with the office of the clerk of the circuit court, are deputy sheriffs. *See* § 59.26(1) and (6). The Commission contends that, because the jailers in question have not been deputized, they do not "qualify" as deputy sheriffs and, therefore, cannot be "deputy sheriffs" within the meaning of § 40.02(48)(b)3.

¶ 24. The Commission's argument runs headlong into our decision in *Mattila*, 243 Wis. 2d 90. In *Mattila*, we determined that:

> Neither § 40.02(48)(am) nor (b)3 makes reference to the requirements and limitations set forth in Wis. Stat. § 59.26 for the appointment of deputy sheriffs. We thus conclude that whether the Douglas County Sheriff complied with the technical requirements for making deputy appointments . . . [is] not relevant to the proper classification of Mattila . . . under § 40.02(48).

*Id.*, ¶ 21. Thus, we agree with the Union that the requirements of § 59.26 do not apply to the definition of deputy sheriff within the meaning of § 40.02(48)(am)13. and (b)3.

¶ 25. Moreover, the Commission's argument that interpreting § 40.02(48)(b)3. without the additional requirements of § 59.26 renders the phrase "qualifying as" meaningless is also without merit. Under the circuit court's and the Union's interpretation, this phrase has

meaning—it is a reference to employees who, under the statutory scheme, have already qualified as a "[d]eputy sheriff or county traffic police officer." Under this view, as applied to deputy sheriffs, the second sentence explains that, when an employee otherwise qualifies as a "deputy sheriff," that employee does not lose that status even if he or she is temporarily assigned to other non-qualifying duties.[6]

¶ 26. The Commission also argues that the term "public safety employee" should be read to include only those employees with the power of arrest. Prior to 2011 Wis. Act 10, Wis. Stat. § 111.70 categorized "law enforcement personnel" in a different collective bargaining unit than non-law enforcement personnel. Wis. Stat. § 111.70(4)(cm)9. (1977). *See also* Wis. Stat. § 111.77 (1977) (settlement of disputes for law enforcement bargaining units). Although the prior version of this statute did not further define "law enforcement personnel," the Commission consistently distinguished law enforcement from non-law enforcement personnel based on the power of arrest. The Commission argues that this distinction remains appropriate under the post-Act 10 amendments to § 111.70.

¶ 27. We disagree that this prior interpretation sheds light on the proper interpretation of the current version of § 111.70(1)(mm). If the legislature meant to make the distinction that was, as the Commission asserts, well settled previously, then it stands to reason that the legislature would have employed that termi-

---

[6] Moreover, it appears that the use of the word "includes" in the second sentence of § 40.02(48)(b)3. indicates that, even if we read the phrase "qualifying as" to require appointment as a deputy, it does not follow that *only* those appointed under Wis. Stat. § 59.26 are "deputy sheriffs" within the meaning of the first sentence.

nology, rather than create a new term with new defining statutory language. The new term is "public safety employee," and it is defined differently than "law enforcement personnel." The Commission acknowledges that, prior to the Act 10 amendments, the organization of employees in collective bargaining units pursuant to §§ 111.70 and 111.77 was entirely unrelated to whether an employee was a deputy sheriff under § 40.02(48)(am)13. and (b)3. Because Act 10 changed the collective bargaining unit requirements under § 111.70, the Commission's prior interpretation of that statute as dependent on arrest powers is not relevant to our interpretation of the term "public safety employee" under the amended § 111.70(1)(mm).

¶ 28. The Commission asserts that the historically different treatment of law enforcement personnel and firefighters makes it obvious that the legislature did not mean to define "public safety employee" to include anything other than those two groups. According to the Commission, the dispute in this case arises because of a "colossal drafting error." However, when statutory language is clear, as it is here, judicial restraint dictates that we must apply that language as written unless doing so would produce an unreasonable result. Simply put, we defer to the plain meaning of the words the legislature actually uses, thereby avoiding the endeavor of divining legislative intent. Moreover, if this was a drafting error, then the question arises why the legislature has not corrected its error. Perhaps more to the point, the legislature can still do so.

## 2. The County's Arguments

¶ 29. As explained above, we agree with the circuit court that the plain language of WIS. STAT.

732

§ 40.02(48)(b)3., combined with the undisputed fact that the jailers here are properly designated as "protective occupation participants," compels the conclusion that the jailers fall within the statutory definition of "public safety employee." The County disputes our analysis under § 40.02(48)(b)3. According to the County, this subsection is inapplicable to jailers. In the County's view, § 40.02(48)(b)3. does not provide a comprehensive definition of "deputy sheriff," but rather defines two factors to be considered "where applicable." That is, § 40.02(48)(b)3. merely supplies two considerations used to determine which employees who might otherwise qualify as "deputy sheriffs" will be treated as "deputy sheriffs" for purposes of being "public safety employees." More specifically, the County contends that the first sentence of § 40.02(48)(b)3. addresses whether certain specified employees of the sheriff's department, who may perform some law enforcement duties, are deputy sheriffs. And, according to the County, the second sentence simply addresses whether deputy sheriffs who are temporarily assigned to non-active law enforcement duties remain deputy sheriffs. The County argues that, because jailers are not one of the listed types of employees in the first sentence and are not "deputy sheriffs" temporarily assigned to non-active law enforcement duties under the second sentence, neither sentence says anything about whether jailers are deputy sheriffs in the first instance.

¶ 30. The problem with this argument is that the County focuses on the exceptions and qualification language and ignores the lead-in definition in § 40.02(48)(b)3. providing that a "deputy sheriff" is "any officer or employee of a sheriff's office or county traffic department." This is broad language to be sure, but it is not ambiguous. And, as explained below, when viewed

in the larger statutory scheme, we are not persuaded that it produces unreasonable results based on any argument advanced by any party.

¶ 31. We turn to the County's argument that our interpretation will produce arbitrary, and therefore unreasonable, results. The County argues that our interpretation would mean that some jailers are deputy sheriffs, but other similarly situated jailers in other counties would not be, depending on whether the other county has designated its jailers as active law enforcement under § 40.02(48)(a). The County argues that "[m]aking the classification of each county's jailers hinge on whether the county has designated its jailers as having active law enforcement duties under WIS. STAT. § 40.02(48)(a) . . . will produce arbitrary results as jailers with identical or very similar duties will be treated differently based on the county in which they work."

¶ 32. The County's unreasonable-results argument rests on the apparent assumption that counties have substantial discretion to designate which employees' "principal duties . . . involve active law enforcement" and are, therefore, "protective occupation participants" under § 40.02(48)(a). That is, the County assumes that § 40.02(48)(a) gives counties leeway to designate jailers with the same duties differently. The County does not provide support for this assumption, and we are unable to discern support for it. So far as we can tell, § 40.02(48)(a) provides a test that can be applied uniformly. Under the test, an employee is a protective occupation participant for purposes of § 40.02(48)(a) if his or her "principal duties . . . involve active law enforcement . . . [and such duties] require frequent exposure to a high degree of danger or peril and also require a high degree of physical conditioning." WIS. STAT. § 40.02(48)(a). The County provides no

reason to think that this test will produce disparate treatment that rises to the level of unreasonable results as applied to similarly situated jailers. Therefore, we reject the County's argument that our interpretation will produce unreasonable results.[7]

### Conclusion

¶ 33. We conclude that, under the plain language of the statutes, the jailers in this case are "public safety employees" because they are "protective occupation participants" and "deputy sheriffs" within the meaning of Wis. Stat. § 40.02(48)(b)3. Accordingly, we affirm the decision of the circuit court that reversed the Commission's decision.

*By the Court.*—Order affirmed.

[7] The County, focusing its attention on the argument it believes the Union is making, complains that the Union's reading of Wis. Stat. § 40.02(48)(b)3. effectively reads an active-law-enforcement requirement into the statute when, plainly, the statute has no such requirement. We agree that § 40.02(48)(b)3. does not define "deputy sheriffs" with respect to whether they are involved in active law enforcement duties. But we do not understand the Union to be arguing otherwise. The active law enforcement requirement flows from § 40.02(48)(a). Accordingly, this part of the County's argument is based on a misreading of the Union's argument. More importantly, this argument does not undercut our analysis.