Ronald BERRY, John H. Boutin, Barbara J. Cram, Roger B. Demaske, Garnet L. Felts, Kay K. Fox, Geraldine A. Frei, John J. Gregar, James F. McMahan, Sherill L. Murphy, Steven R. Olson, Betty A. Preuss, Kenneth D. Randall, Steven J. Sawa, Lila M. Sommerfeldt, John R. Southworth, Darleen J. Ulrich, Jerome S. Weiner, James A. Wheeler, Plaintiffs-Appellants,

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Department of Military Affairs, the Adjutant General, Defendants-Respondents.

Court of Appeals

*No. 97–0260. Submitted on briefs July 9, 1997.—Decided September 18, 1997.*

(Also reported in 570 N.W.2d 610.)

On behalf of the plaintiffs-appellants, the cause was submitted on the brief of *Ross A. Seymour* of *Davis, Birnbaum, Marcou, Seymour & Colgan* of La Crosse.

On behalf of the defendants-respondents, the cause was submitted on the brief of *William W. Cassel* of Madison.

Before Eich, C.J., Dykman, P.J., Deininger, J.

DEININGER, J.  Ronald Berry and eighteen other claimants appeal a judgment which affirmed the decision of the Labor and Industry Review Commission (LIRC) to deny them unemployment compensation benefits. Claimants terminated their employment in return for early retirement and voluntary separation incentives offered by their employer. They claim, however, that they are entitled to benefits under an exception for employees who quit or accept a layoff in lieu of the "suspension or termination by the employer of another employe's work." Section 108.04(7)(am), STATS.[1] The LIRC interprets the statute to require a showing by the claimants that their voluntary terminations were related to the identifiable, threatened termination of some other employee's work. We conclude that the LIRC's interpretation of the statutory exception is entitled to great weight deference, and that it is not unreasonable. Accordingly, we affirm.

---

[1] Section 108.04(7), STATS., provides, in relevant part, as follows:

> (7)  VOLUNTARY TERMINATION OF EMPLOYMENT.  (a) If an employe terminates work with an employing unit, the employe is ineligible to receive benefits . . . .
>
> (am)  Paragraph (a) does not apply if the department determines that the suspension or termination of the claimant's work was in lieu of a suspension or termination by the employer of another employe's work.

## BACKGROUND

Claimants do not dispute the LIRC's factual findings, which we summarize here. Claimants worked for the State of Wisconsin Department of Military Affairs. The department received word that the federal funding and authorizations for sixty-one employees was to be eliminated. In response, the department implemented a hiring and promotions freeze and obtained authorization to offer "buy-outs" and early retirements to eligible employees.

All of the claimants accepted either voluntary early retirement or a voluntary separation incentive pay buy-out, or a combination of both. One of the claimants "specifically indicated that he requested voluntary early retirement and voluntary separation incentive pay, and that if funds for voluntary separation incentive pay were not available he would not accept voluntary early retirement." As a result of various personnel and cost-saving actions taken by the department, no involuntary layoffs or terminations became necessary. The claimants did not establish that there were other employees "identified for termination or suspension" whose places they took by voluntarily terminating their employment.

The LIRC concluded that the claimants' "quitting was to take advantage of the employer's buy-out," and that they had failed to establish that, had they not terminated their work, another employee "would lose his or her job." Thus, the LIRC ruled that claimants were ineligible for unemployment compensation benefits because they had terminated their employment "within the meaning of § 108.04(7) (a), STATS., and that [their] quitting was not for any reason constituting an exception to that section." The claimants sought circuit

court review of the decision, and the court entered a judgment affirming the LIRC decision.

## ANALYSIS

■ We review the LIRC's decision, not that of the trial court. *Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981). We do not weigh the evidence or pass upon the credibility of the witnesses. The LIRC's findings of fact will be upheld on appeal if they are supported by credible and substantial evidence in the record. Section 102.23(6), STATS.; *see Applied Plastics, Inc. v. LIRC*, 121 Wis. 2d 271, 276, 359 N.W.2d 168, 171 (Ct. App. 1984).

■ We are not bound by the LIRC's legal conclusions, *DHSS v. LIRC*, 159 Wis. 2d 300, 309, 464 N.W.2d 74, 77 (Ct. App. 1990), and we will review its conclusions of law de novo when the case is one of first impression. *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 245–46, 493 N.W.2d 68, 73–74 (1992). In certain situations, however, we defer to the LIRC's interpretation of a statute. *State ex rel. Parker v. Sullivan*, 184 Wis. 2d 668, 699, 517 N.W.2d 449, 460–61 (1994). We will accord the LIRC's interpretation great weight once we have determined:

> (1) [that] the agency was charged by the legislature with the duty of administering the statute; (2) that the interpretation of the agency is one of long-standing; (3) that the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) that the agency's interpretation will provide uniformity and consistency in the application of the statute.

*Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98, 102 (1995).

The legislature has charged the LIRC with the duty of administering the unemployment compensation statutes by hearing appeals from benefit determinations made by the Department of Workforce Development. *See* §§ 103.04 and 108.09(6), STATS. In its brief, the LIRC refers this court to six of its prior decisions, dating from 1978 through 1994, where it interpreted and applied § 108.04(7)(am), STATS.[2] Several of the decisions deal with terminations involving early retirement or voluntary separation incentives. In each, the LIRC interpreted the statute to require a showing that a claimant's voluntary termination of employment was related to an identifiable, threatened termination or suspension of some other employee's work.

■

We are thus satisfied that the LIRC's interpretation of § 108.04(7)(am), STATS., is one of long-standing; that in making it, the LIRC has employed its expertise and specialized knowledge of employer-employee relationships and transactions; and that the interpretation provides uniformity and consistency in the application of § 108.04(7)(am). The LIRC's interpretation is therefore entitled to great weight deference from this court.

---

[2] *Schwoch v. Wisconsin Bell, Inc.*, U.C. Hearing No. 94201467EC (December 1, 1994); *Buehler v. GTE North, Inc.*, U.C. Hearing No. 93401346MN (July 28, 1993); *Vadnais v. Wenzel's Amusements*, U.C. Hearing No. 93600329WB (April 23, 1993); *Wojciechowski v. DILHR*, No. 474–004 (Milwaukee County Cir. Ct., June 29, 1979); *Phillips v. LIRC*, No. 88-CV–1999 (Dane County Cir. Ct., September 30, 1988); and *Graham v. LIRC*, No. 94-CV–0635 (Rock County Cir. Ct., April 14, 1995).

Accordingly, we will sustain the LIRC's interpretation of § 108.04(7)(am) if it is "merely . . . reasonable," and the burden of proof is on the claimants to show that the interpretation is unreasonable. *See Harnischfeger Corp.*, 196 Wis. 2d at 661, 539 N.W.2d at 102. An interpretation is unreasonable only if it "directly contravenes the words of the statute, it is clearly contrary to legislative intent or it is without rational basis." *Id.* at 662, 539 N.W.2d at 103.

We conclude that interpreting § 108.04(7)(am), STATS., to require an *identifiable*, threatened suspension or termination of another employee's work is not unreasonable. The interpretation does not contravene the words of the statute. Section 108.04(7)(am) requires that a claimant's voluntary termination be "in lieu of a suspension or termination by the employer of another employe's work." We fail to see how a claimant could establish that his or her voluntary termination was "in lieu of" another employee's involuntary termination unless the claimant can identify another individual, or group of individuals, who were able to keep working as a direct result of the claimant's voluntary action. The language of § 108.04(7)(am) does not prohibit the LIRC's interpretation and perhaps even compels it.

The claimants argue, however, that the LIRC's interpretation of § 108.04(7)(am), STATS., is contrary to the legislature's intent that chapter 108 be "liberally construed to effect unemployment compensation coverage for workers." *See Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 62, 330 N.W.2d 169, 177 (1983); § 108.01, STATS. We disagree. The Laws of 1975, ch. 343, which originated as May 1976 Special Session Assembly Bill 1, created the exception under § 108.04(7)(am). An analysis of the bill, prepared by the

Legislative Reference Bureau (LRB), describes the provision as follows:

> Two new exceptions to the law's quit disqualification are added, to allow benefits in voluntary layoff (inverse seniority) situations and to remove the requalifying requirement . . . .
>
> . . . .
>
> . . .The first change [§ 108.04(7)(am)] allows an individual who elects to accept a layoff, which avoids the necessity of laying off another worker, to receive benefits if otherwise eligible.

1976 Special Session Assembly Bill 1, LRB–10638/2. The LRB's analysis is not a conclusive declaration of legislative intent, nor is its interpretation of the provision binding on this court. Nonetheless, the references to "inverse seniority" and acceptance of "a layoff, *which avoids the necessity of laying off another worker*" (emphasis added), persuade us that the claimants have not met their burden to establish that the LIRC's interpretation is contrary to legislative intent.

Finally, the LIRC's interpretation has a rational basis. It ensures that an employee who voluntarily steps forward to accept a layoff so that another may avoid that fate, takes his colleague's place not only in the unemployment line, but also as a rightful recipient of unemployment compensation benefits. The "one-for-one" interpretation serves to separate that circumstance from those present here, where employees responded to separation incentives offered by an employer as a general cost-cutting or down-sizing measure. These claimants elected to accept the separation incentives without knowing whether any department employees would ultimately be involuntarily suspended or terminated.

The LIRC acknowledges that it would be unreasonable to require a quitting employee to "point to exactly whose position it was that he [or she] saved by quitting." But it claims that its interpretation does not place that burden on the claimants. Rather, in its brief, the LIRC describes its application of § 108.04(7)(am), STATS., as follows:

> [T]he commission does not require that an employe be able to identify the individual or individual position saved by his quitting. What the commission does require is that there be credible evidence that the employer had definitely elected to terminate or suspend one or more people, and that the employe claiming the statutory exception can demonstrate that he accepted termination or suspension in lieu of termination or suspension of *some* other employe.

(Emphasis in original.) We conclude that this represents a rational way in which to interpret and apply the statute.

Since the claimants have not established that the LIRC's interpretation of § 108.04(7)(am), STATS., is unreasonable, we affirm.

*By the Court.*—Judgment affirmed.